George Tilzer, J. P.
The defendants appeal from a judgment of the Criminal Court of the City of New York, County of New York, convicting them, after trial, of violating section 722-b of the Penal Law. Defendant Cordon was sentenced to serve 5 days’ imprisonment or to pay $50 and defendant Sprowal was sentenced to serve 60 days in the workhouse.
Penal Law, section 722-b, entitled “ Loitering in school buildings,” provides: “ Any person not the parent or legal guardian of a pupil in regular attendance at said school who loiters in or about any school building or grounds without written permission from the principal, custodian or other person in charge thereof, or in violat'on of posted rules or regulations governing the use thereof, shall be guilty of disorderly conduct.”
Patrolman Cruntz testified that at 1:40 in the afternoon of May 29, 1964, while standing in front of the main entrance of *808 the Charles Evans Hughes High School, he observed a group of some eight persons walking toward the school. The school is located on the north side of West 18th Street, in the middle of the block between Eighth and Ninth Avenues, Manhattan. There is no yard or fence between the school and the sidewalk, and the sidewalk is 10 to 12 feet wide. Officer Gruntz inquired of defendant-appellant Sprowal what the group intended to do and Sprowal replied that they planned to distribute literature in front of the school. The officer then told Sprowal that it was not permissible to hand out such literature in front of the school; that they could distribute the leaflets on the corner or on another block, but that they could not interfere with the students coming in or out of the school. At the time between 250 and 500 students were leaving the school. At the front entrance to the school building was a sign reading, “No loitering. Persons found loitering in front of the building are subject to the charge of Disorderly Conduct.”
For some 30 minutes the officer pleaded with the defendants to discontinue handing out the literature in front of the entrance to the school, not to block up the place and get out of the block as they were interfering with the dismissal of the students. Sprowal refused to move and sat down on the street. Four others, of the original group of eight, also refused to move away from the school and continued handing out literature, within five feet from the main entrance of the school, to some 200 students who were milling around the group.* Gruntz then placed Sprowal and three of the others under arrest. The defendant-appellant Gordon in the meantime had moved 200 to 300 feet east of the school, where he continued handing out literature. Gruntz had a fellow officer summon Gordon to his side, and Gordon having refused to leave the block, was also placed under arrest. At this point, due to the pressure of the students emerging from the school, the officer and the defendants crossed to the south side of the street.
The trial court, in an oral opinion, found three of the defendants, who according to defense testimony never distributed literature on the school side of the street, not guilty of violating section 722-b. Defendants Sprowal and Gordon were found guilty of violating section 722-b. The court did not indicate whether it had accepted the People’s or the defense’s testimony concerning the position of defendant Gordon on West 18th Street.
*809 It is against this background that we consider the various arguments of the appellants. A legitimate interpretation of section 722-b, in our view, is that the activities of the appellants (passing for the moment the question of whether the acts or conduct of each of the appellants were identical in kind) were not irrelevant to the purpose for which the statute was passed. While the Legislature was concerned primarily with preventing vandalism and assaults on pupils and teachers, it was also advised of the serious difficulties that school authorities both within and without the city were having with gangs of young people coming into schools, frightening teachers and pupils, creating disturbances and ‘1 making nuisances of themselves in or about a public school ” (letter of executive secretary of New York State School Boards Associations, Inc., to Governor Dewey, March 31,1954, in relation to bill that ultimately became section 722-b). The method chosen by the Legislature to protect the schools was a blanket prohibition against the presence of all unauthorized persons from the vicinity of school grounds. If leaflet distributors are excluded from the operation of section 722-b, then the ability of school authorities and police to protect pupils against the distribution of obscenity and narcotics in or about school premises will be impaired. The authorities will be forced to scrutinize every person near a school with leaflets in order to distinguish between those with leaflets only, and others who may have obscene matter and narcotics in addition to leaflets.
Nor do we find that the statute itself is void for vagueness and indefiniteness. The Court of Appeals held the section constitutional against attack on the same ground in People v. Johnson (6 N Y 2d 549). There Johnson actually invaded the school building and grounds of a country school. The fact that the activities of appellants took place on the street in front of the entrance of a New York City public school does not thereby legitimatize their conduct. We must give to the statute a sensible construction with relation to the evils sought to be proscribed. The protection to be afforded pupils may not depend upon the circumstance that the school in one case embraces an area of many acres in a rural community while in another the school is devoid of grounds and fronts directly on a public street in a large city. The 1 ‘ section was designed to exclude from school areas degenerates, narcotic peddlers, vandals and the like ” (dissenting opn. of Fuld, J., People v. Johnson, supra, p. 554). At least as applied to appellants’ conduct some five feet from the main entrance to the school, the statute, in using the term “in or about ” a school building, is *810 not lacking in specificity (Cox v. Louisiana, 379 U. S. 536 [1965]).
Moreover, section 722-b does not impose a prior restraint on free speech. The restraint imposed by the statute is not one affecting speech. It places an absolute ban on the physical presence of unauthorized persons in the limited areas in or about school buildings. For that matter, the appellants failed to offer any proof of arbitrary or discriminatory application of the requirement of prior approval by the school authorities.
We too are concerned in protecting our citizens in their ancient right to use of the streets for the dissemination of information and opinion. This right, nevertheless, ranks no higher than other rights protected by the Constitutions and is subject to reasonable restrictions when necessary to safeguard the public interest. The right is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order (Hague v. C. I. O., 307 U. S. 496, 515; People v. Stover, 12 N Y 2d 462, 469). It is our “ delicate and difficult task ” to weigh “ the circumstances ” and appraise “ the substantiality of the reasons advanced in support of the regulation of the free enjoyment of ” speech. (Schneider v. State, 308 U. S. 147, 161.)
It must be observed that the statute in the case at bar is not directed at freedom of speech. The fact that it may have a partial and incidental deterrent effect on free speech is justifiable and a necessary concession to the overriding public interest in the maintenance of order and the protection of pupils caused ‘ ‘ by the presence of unauthorized persons invading the precincts of our schools such, for instance, as dope peddlers, sex offenders, idlers and trouble makers in general, and other persons harboring some illegitimate purpose involving the innocence of immature school children and youth.” (People v. Johnson, supra, p. 552.) Moreover, appellants may not exercise this liberty by taking a stand directly in front of the main entrance of a school, forming a cordon which blocked the erupting mass of students. Prohibition of such conduct would not abridge the constitutional liberty. In order to assure the safety and convenience of its citizens a State may regulate the times and places and the conduct of those using the streets to impart information through speech or distribution of literature. (Cantwell v. Connecticut, 310 U. S. 296, 304.) When those sought to be safeguarded are the youth of the community, any conflict arising between the remedy provided by the Legislature and First Amendment freedoms must be resolved in favor of the statute designed to insulate students from the dangers and evils enumerated. Because of their very youth and inexperi *811 ence, their susceptibility and exposure to the vices of a large city, the measure of control which the State may exercise for the protection of school students is of much wider scope than that which might be exercised for the community at large. (Prince v. Massachusetts, 321 U. S. 158.)
It must be noted too that the statute impinges on the right to use the street for the dissemination of information in but a minor way. The proscription applies only to streets contiguous to school buildings. And even this forbidden area would be limited to the street in the immediate school area. The appellants before us, as well as their six companions could have achieved their goal of distributing literature to the students without violating the statute by moving to the corners of Eighth and Ninth Avenues, as suggested by the officer.
The interest of the State that its youth shall come to manhood in physical and moral health justifies the statute in issue. Such conclusion is not weakened by any fear that the statute will be utilized to impose a special restraint upon academic freedom. We would not shield our youth from the expression of ideas, even those repugnant to our own. But we would insist that this constitutional right, as all such rights, be exercised in consonance with peace and good order. If not, and if our young citizens be shown an example of disregard of law and apathy on the part of governmental authority, we will have failed in their education as to the true meaning of liberty and freedom. The exercise of a constitutional right cannot license an illegal act. “ The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy.” (Cox v. Louisiana, supra, p. 554.)
We have indicated eaidier that it was impossible to ascertain from the oral opinion rendered by the trial court whether the determination of the defendant Gordon’s guilt was based upon a finding of fact that he stood 300 feet down the city block from the end of the school building and in front of an apartment house 30 feet from a corner, as the defense testified, or that he stood with the defendant Sprowal 5 feet from the main entrance to the high school, as the complaining officer testified. The defense testimony was at least partially accepted and the officer’s rejected by the court by its judgment acquitting three defendants. If the defense testimony was accepted as to the *812 defendant Gordon, since the statute, as we have also noted above, applies only to streets contiguous to school buildings and grounds in the immediate school area, the trial court erred in finding that Gordon violated section 722-b. As a matter of law, under the circumstances of this case, Gordon could not be said to have been loitering in or about a school building or grounds if he was distributing leaflets some 300 feet down the city block from the end of the school building. Accordingly, the judgment convicting the defendant Gordon of violating section 722-b of the Penal Law is reversed, the fine remitted and a new trial ordered.
With regard to the defendant Sprowal, it is urged that there was no possible justification for imposing a sentence of 60 days’ imprisonment on this appellant. Since an issue is raised in this regard and since Sprowal’s criminal record is properly to be considered on the question of sentence (Ethical Problems in the Performance of the Judicial Function, Hon. Charles D. Breitel, Associate Justice, Appellate Division, First Department, New York Law Journal, Oct. 13, 1965, p. 4), it is to be observed that Sprowal’s criminal record in this State dates back to 1959. In 1959, 1960 and 1961 he was arrested and subsequently convicted for violations of the Public Health Law with respect to narcotic drugs. In July of 1963, the sentencing court noted, Sprowal received two 30-day suspended sentences for obstructing a police officer and for disorderly conduct. The record in the circumstances does not disclose adequate reason to commend appellant to clement regard by an appellate court. The judgment convicting defendant Sprowal should be affirmed.

 The leaflets being distributed requested students to work with and join cobb and also requested support £or a bill to establish an independent civilian board to review charges of improper police activities.