William S. Shea, J.
This case is submitted to the court on an agreed “statement of facts.” Both the District Attorney and the defendant, Manuel, agreed that instead of going through a trial, the statement, quoted below, should be considered to be the court’s findings after a trial and the court should determine the guilt or innocence of the defendant, Manuel, on the basis of those findings. Defendant Lewis has failed to appear and a warrant has been issued for his arrest. He is therefore no part of the agreement.
The statement of facts is quoted as follows: “At about 8:00 a.m. on October 27, 1971, the defendants were standing on the public sidewalk on Irving Place, in Manhattan, near the entrance to Washington Irving High School. They were handing out leaflets, identical to the one attached hereto and labeled Exhibit 1 A ’, to people walking on the sidewalk. These leaflets urged participation in the demonstration to be held on November 6, 1971, the purpose of which was to call for the end of American involvement in the war in Vietnam. Although these leaflets were given to all pedestrians who passed by, it was the defendant’s aim to distribute the leaflets to students at Washington Irving High School. Many of these leaflets were received and read, some were discarded.
“At about 8:45 a.m. Patrolman John Nielson approached the defendants and told them that they could not distribute the leaflets, ordered them to stop and leave. The defendants insisted that the distribution of these leaflets was lawful and they refused to leave or stop. After a second order to stop and another *42 refusal, the defendants were placed under arrest. They were charged with Loitering in violation of Section 240.35, Subdivision 5, of the Penal Law. They have pleaded not guilty.
11 During the course of this incident there was no- profanity, force or effort to resist arrest. The defendants’ actions were peaceful and the arresting officer had no reason to believe that their actions would lead to disruption. While the defendants handed out the leaflets, students and other pedestrians passed freely. There was a sign posted on the school which advised the public that loitering was prohibited.
‘ ‘ The fingerprint records showed that neither defendant had been previously arrested.”
The defendants contend that subdivision 5 of section 240.35 violates the First Amendment’s guarantee of free speech, in that the section prohibits defendants who were rightfully on a public street for a legitimate purpose — the peaceful distribution of literature — from exercising their rights to express their views in an orderly fashion.
There is no doubt, the Supreme Court has long recognized the right of freedom of speech in public areas. Picketing, distribution of leaflets and other expressions of views have been held to be protected by the First Amendment. (Lovell v. Griffin, 303 U. S. 444; Food Employees v. Logan Plaza, 391 U. S. 308; Tinker v. Des Moines School Dist., 393 U. S. 503.) Of the above three cases only the Tinker casec involves a school and in that case students were allowed to wear armbands inside a school as a protest against the war in Vietnam. The court stated that a prohibition against expression of an opinion without any evidence that the rule is necessary to avoid substantial interference with school discipline or the rights of others is not permissible under the First and Fourteenth Amendments.
The State has a valid interest and responsibility to protect students in their schools. Subdivision (5) of section 240.35 was designed to protect the students and their schools from drug pushers, vandals, degenerates and the like.
Subdivision (5) of section 240 is the new Penal Law section which proscribes conduct penalized as disorderly conduct by section 722-b of the former Penal Law.
Under a similar factual situation in 1966, section 722-b was held to be constitutional in that it did not abridge the therein defendants’ rights to distribute leaflets.
In People v. Sprowal (49 Misc 2d 806, affd. without opn. 17 N Y 2d 884, app. dsmd. 385 U. S. 649) the court stated (p. 810):
‘1 It must be observed that the statute in the case at bar is not directed at freedom of speech. The fact that it may have a *43 partial and incidental deterrent effect on free speech is justifiable and a necessary concession to the overriding public interest in the maintenance of order and the protection of pupils caused ‘ by the presence of unauthorized persons invading the precincts of our schools such, for instance, as dope peddlers, sex offenders, idlers and trouble makers in general, and other persons harboring some illegitimate purpose involving the innocence of immature school children and youth ’ (People v. Johnson, supra, p. 552).”
The defendants contend that Sprowal {supra) should not be followed, and in furtherance of that contention they cite Mosley v. Police Dept. of City of Chicago (432 F. 2d 1256; cert, granted 404 U. S. 821, affd.-U. S.-; 40 LW 4877).
. The statute in the Mosley case in effect bars all picketing or demonstrations within 150 feet from any school from one half hour before to one half hour after school hours, with the exception of picketing for a labor dispute. The court therein stated that the ordinance is overbroad. It lays down a blanket prohibition against all forms of picketing or demonstrating, other than labor picketing, within 150 feet of a school no matter how peaceful. It prohibits one man carrying a sign from walking on a public street adjoining a school, without condition or reservation.
This case however is distinguishable from the Sprowal case {supra) because section 722-b did not lay down a blanket prohibition against all forms of picketing or demonstrating. It did allow and now subdivision (5) of section 240.35 does allow the expression of First Amendment rights, picketing, demonstrating, distribution of literature with written permission of the authorized person in accordance with rules and regulations.
This interpretation gives rise to defendants’ further objection that a statute empowering a public official to effectively determine who may and who may not distribute literature near a school violates the First Amendment. This objection would be well taken if the statute in question were like those in Lovell v. Griffin (303 U. S. 444) or Cox v. Louisiana (379 U. S. 536). In those cases the statutes in effect provided that the authorized persons, or the “local officials ” in their unbridled discretion could decide who could and who could not exercise his First Amendment rights. But where there are guidelines set up that the ‘ ‘ local officials ’ ’ must follow and these guidelines set up reasonable rules and regulations relating to the purpose of the statute, this does not amount to an unconstitutional restraint. Subdivision (5) of section 240.35 shows that permis *44 sion may be obtained from anyone authorized to grant the same, making it constitutional on its face.
In this case there is no evidence as to whether or not the defendants even applied for permission to exercise their rights, or that any rules and regulations were not proper and reasonable guidelines.
In Sprowal (49 Misc 2d 806, 810, supra) the court stated “ Moreover, section 722-b does not impose a prior restraint on free speech. The restraint imposed by the statute is not one affecting speech. It places an absolute ban on the physical presence of unauthorized persons in the limited areas in or about school buildings. For that matter, the appellants failed to offer any proof of arbitrary or discriminatory application of the requirement of prior approval by the school authorities.”
The court follows the Sprowal case.
The defendant, Manuel, is found guilty as charged.